UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| KRISTA HAMILTON, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 07-183-ART |
| ) | |
| v. ) | |
| ) | |
| HAROLD COMBS, et al., ) | **MEMORANDUM OPINION AND** |
| ) | **ORDER** |
| Defendants. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Before the Court is the defendants' motion for summary judgment, R. 13, in this employment discrimination case. This lawsuit presents a claim of sex discrimination under 42 U.S.C. § 2000E, *et seq.*, as well as claims of due process and equal protection violations brought under 42 U.S.C. § 1983. Specifically, Plaintiff Krista Hamilton alleges that Defendants Harold Combs and the Knott County Board of Education ("the Board") discriminated against her because of her pregnancy and violated her equal protection rights when they hired a man for a vacant teaching position instead of her. Hamilton also asserts that the defendants violated her due process rights by failing to provide her with a hearing. Having considered the parties' briefs and having heard oral argument on the matter, the Court concludes that there are no genuine issues of material fact, and that no reasonable juror could find in favor of the plaintiff. Therefore, the defendants' motion for summary judgment is **GRANTED**.

Plaintiff Krista Hamilton is a teacher who is certified to teach middle school science and social studies. Dep. of Krista Hamilton, R. 11 at 32. She has been employed as an untenured teacher in the Knott County School System in two different stints. Her first stint began in January of 2004, when

she was hired to teach fifth, sixth, seventh, and eighth grade science at Caney Elementary School. *Id.* at 12-13. At the end of that school year, however, she was "pink-slipped" — i.e., terminated — and she was not rehired for the 2004-2005 school year. *Id.* at 12, 14.

During the 2004-2005 school year, Hamilton taught fourth, fifth, sixth, seventh, and eighth grade science at Mountain Christian Academy, which is not a part of the Knott County School System. *Id.* at 14. She left this position in February of 2005 to take a higher paying job selling insurance. *Id*. at 11, 14.

Hamilton only stayed in the insurance industry for a few months, however, because in August of 2005 she was again hired to teach in the Knott County School System when she was given a position as a science teacher at Beaver Elementary School. *Id.* at 12, 15. In March of 2006, Hamilton learned that she was pregnant, *id.* at 37, and due to complications with her pregnancy, she was forced to go on disability leave in April. *Id.* at 38. At the end of the 2005-2006 school year, she was terminated once again. *Id.* at 15. She does not claim that her termination was discriminatory though.

Following her termination at the end of the 2005-2006 school year, Hamilton was placed on the seniority list maintained by the Knott County School System. This list was composed of Knott County teachers who had lost their jobs, and it was maintained pursuant to the collective bargaining agreement between the Knott County School System and the local teachers' union. Under this agreement, the Knott County School System was required to consult the list in filling teaching vacancies. However, the collective bargaining agreement did not require that every vacancy be automatically filled with the most senior teacher. Instead, seniority was one of several factors to be considered in the assignment of teachers. Specifically, the collective bargaining agreement provided

2

that teachers were to be assigned to positions according to the following criteria, listed in descending order of importance: (1) certification; (2) needs of the educational program; (3) successful or unsuccessful evaluations over the last three years; (4) seniority; and (5) career experience. R. 14, Attach. 3, Ex. 4 at 11.

During the summer before the 2006-2007 school year, Carr Creek Elementary School — which is in the Knott County School System — was faced with two teaching vacancies. Dep. of Dana Slone, R. 23 at 11. Those vacancies arose because two untenured teachers at the school — Garry Chadwell and Franklynn Watkins — had been "pink-slipped" at the end of the 2005-2006 school year. *Id.* at 15. The position vacated by Chadwell was a seventh and eighth grade social studies and language arts position, and the position vacated by Watkins was a fifth and sixth grade language arts position. *Id.* at 6, 11, 13, 15. The seventh and eighth grade position was filled by Neal Feltner, a tenured teacher who had previously taught at Knott County Central High School. *Id.* at 11; Dep. of Harold Combs, R. 12 at 20. Garry Chadwell was called back to fill the fifth and sixth grade position, Dep. of Dana Slone, R. 23 at 15-16, presumably because he was the most senior teacher available with a certification to teach language arts.

Two days before the start of the 2006-2007 school year, Neal Feltner decided to retire. Dep. of Harold Combs, R. 12 at 20. The principal of Carr Creek Elementary School acted quickly to fill this unexpected vacancy by reassigning Garry Chadwell to the seventh and eighth grade social studies and language arts position. Dep. of Dana Slone, R. 23 at 11. Thus, Chadwell ended up with the exact same position that he had held during the 2005-2006 school year. The fact that he had previously held this position was one of the reasons that he was reassigned to it when Feltner retired. Specifically, Dana Slone, the principal of Carr Creek Elementary, has testified that Chadwell was

3

reassigned to the seventh and eighth grade social studies and language arts position "based on the needs of the students, his excellent evaluations, lesson plan development and implementation, experience in working with the seventh and eighth grade students at Carr Creek, [and] positive attitude towards students, staff and parents." Dep. of Dana Slone, R. 23 at 11-12.

Chadwell's reassignment to the seventh and eighth grade social studies and language arts position obviously created a vacancy in the fifth and sixth grade language arts position. As a result, Franklynn Watkins was called back to fill that position, which she had held during the previous school year. *Id.* at 13..

After the 2006-2007 school year began, two teachers who had taught with Hamilton at Beaver Elementary School informed her that Garry Chadwell had been hired to fill the seventh and eighth grade position at Carr Creek Elementary School. Dep. of Krista Hamilton, R. 11 at 34. Hamilton's mother was surreptitiously dispatched to Carr Creek Elementary to ascertain the truth of these assertions. Acting under the guise that she had a grandchild who might be transferred to Carr Creek Elementary, Hamilton's mother asked Principal Slone for a list of the school's teachers and the subject areas that they taught. *Id.*; Dep. of Dana Slone, R. 23 at 9, 14. Slone quickly produced a piece of paper that listed all of Carr Creek Elementary's teachers, and she jotted down that Chadwell was teaching social studies and vocational studies. Dep. of Dana Slone, R. 23 at 14. In her deposition, Slone testified that this was a mistake. She explained that she was in a hurry and simply forgot to write that Chadwell was also conferencing with writing portfolios and teaching reading and handwriting. *Id*.

After seeing the paper that her mother obtained from Carr Creek Elementary's principal, Hamilton arranged a meeting with Defendant Combs, who was then the superintendent of the Knott

4

County School System. Dep. of Krista Hamilton, R. 11 at 48-49; Dep. of Harold Combs, R. 12 at 25-26. Hamilton and Combs met on August 15, 2006. R. 14, Attach 4, Ex. 9. At this meeting, Hamilton — who had acquired a copy of the Knott County seniority list in the meantime — attempted to explain to Combs that she should have been given the seventh and eighth grade position at Carr Creek Elementary instead of Chadwell because her name appeared higher than his on the seniority list.[1] Dep. of Harold Combs, R. 12 at 26. The day after this meeting, Combs sent Hamilton a short letter explaining that he had examined Hamilton's concerns and had concluded that she did not have a right to the position she sought. R. 14, Attach. 4, Ex. 9. After receiving this response, Hamilton sought a right-to-sue letter from the EEOC and subsequently filed this lawsuit against Combs and the Knott County Board of Education. She claims that the seventh and eighth grade position at Carr Creek Elementary School was given to Chadwell instead of her because she was pregnant. She also claims that this was a violation of her constitutional right to equal protection under the law. Finally, Hamilton alleges that the defendants' failure to give her a hearing before giving the job to Chadwell was a violation of her due process rights under the Constitution. These claims are all without merit.

---

[1] Indeed, Hamilton — whose name appears on the seniority list as "Krista Baldridge" — is the tenth person on the list, while Chadwell is the eleventh. R. 14, Attach 4, Ex. 8. Despite the fact that Hamilton is technically above Chadwell on the list, the list actually indicates that they were both hired on August 4, 2005, thereby giving them the same level of seniority. *Id*. Hamilton claims that the list miscalculated her seniority because it failed to take into account her stint in the Knott County system in 2004. This argument appears to be wrong since the collective bargaining agreement says that seniority should not include a period of teaching in the Knott County system that was interrupted by a period of teaching elsewhere. Nevertheless, the issue of whether Hamilton's seniority was correctly calculated is not germane to the ultimate issues here.

I. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that may affect the outcome of the issue at trial, as determined by substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows "that a reasonable jury could return a verdict for the nonmoving party." *Id*. Conversely, summary judgment is proper when "the record, taken as a whole, could not lead a rational trier of fact to find for [the nonmoving] party." *McKinnie v. Roadway Express, Inc.*, 341 F.3d 554, 557 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). When making this determination, the Court must construe the evidence in the light most favorable to the nonmoving party, and it may not weigh the evidence . *See Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

In order to obtain summary judgment, the moving party need only show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). This burden does not require the moving party to affirmatively introduce evidence in its favor. *See id*. Instead, the moving party may meet its burden simply by showing the court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial. *Id.* at 325. Once this is accomplished, the burden shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994) (citing *Celotex Corp.*, 477 U.S. at 324; *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432,

6

1435 (6th Cir. 1987)). If it cannot do so, summary judgment must be granted in favor of the nonmoving party.

## II. Hamilton's Pregnancy Discrimination Claim

Discriminating against an employee on the basis of pregnancy is a form of sex discrimination, which is prohibited by Title VII. 42 U.S.C. § 2000e(k). In cases like the one at hand, where the claim of discrimination is not premised on direct evidence of pregnancy-based discriminatory animus, the claim must be analyzed under the burden-shifting evidentiary framework established in *McDonnell Douglas v. Green*, 411 U.S. 792, 802-03 (1973). *Tysinger v. Police Dep't of Zanesville*, 463 F.3d 569, 572-73 (6th Cir. 2006) (citing *Prebilich-Holland v. Gaylord Entertainment Co.*, 297 F.3d 438, 442 (6th Cir. 2002)). In order to survive summary judgment under the *McDonnell Douglas* analysis, the plaintiff must first establish a prima facie case of pregnancy discrimination by showing that: "(1) she was pregnant, (2) she was qualified for [the] job, (3) she was subjected to an adverse employment decision, and (4) there is a nexus between her pregnancy and the adverse employment decision." *Prebilich-Holland*, 297 F.3d at 442 (quoting *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 658 (6th Cir. 2000)). If the plaintiff establishes a prima facie case, the burden then shifts to the defendants to articulate a legitimate nondiscriminatory reason for their actions. *See Cline*, 206 F.3d at 658 (citing *Boyd v. Harding Acad. of Memphis, Inc.*, 88 F.3d 410, 413 (6th Cir. 1996)). If the defendants can articulate such a reason, then the burden shifts back to the plaintiff to show that the nondiscriminatory reasons offered by the defendants "were not credible, but were merely a pretext for intentional discrimination." *Id*. (citing *Boyd*, 88 F.3d at 413). In the case at hand, Hamilton has not established a prima facie case. Moreover, even if one were to assume for the sake of argument

that she had established a prima facie case, the defendants would still be entitled to summary judgment because there were legitimate nondiscriminatory reasons for hiring Chadwell instead of Hamilton, and there is no evidence that those reasons were mere pretext for discrimination.

Hamilton is unable to establish a prima facie case because she was not qualified for the seventh and eighth grade position that she claims should have been given to her instead of Chadwell. This position was a dual social studies and language arts position, and Hamilton — unlike Chadwell — was not certified to teach both of those subjects.

Hamilton concedes that she was not certified to teach language arts, but she argues that this does not matter because the position was actually a dual social studies and vocational studies position, not a dual social studies and language arts position. Hamilton asserts that she was qualified to teach both social studies and vocational studies, and on that basis, she claims that she was qualified for the seventh and eighth grade position. This argument is unavailing for two reasons. First, the argument omits a key fact. While it is true that Chadwell ended up teaching both social studies and vocational studies, these were not the only subjects that he taught. In addition, he taught reading and handwriting, and he was responsible for conferencing with students in developing their writing portfolios. Dep. of Dana Slone, R. 23 at 10. Because there is no evidence that Hamilton was qualified to teach these other subjects, it does not matter that she was qualified to teach social studies and vocational studies. Perhaps more importantly, though, even if Hamilton had been qualified to teach all of the subjects that Chadwell ended up teaching, that would not change the fact that she was unqualified to teach the subjects that Chadwell was hired to teach — i.e., social studies *and* language arts. The Court might be able to overlook this fact and conclude that a language arts certification was not actually a requisite qualification for the position if there were evidence indicating that the

requirement of a language arts certification had been nothing more than a ruse to prevent Hamilton from being hired. However, no such evidence exists. Instead, the evidence simply indicates that the evolving needs of the student body required that the job description be slightly altered after Chadwell had been hired. Because it is important that school administrators have the flexibility to restructure curriculum as they see fit, it would be inappropriate for this Court to read a discriminatory animus into those actions where there is no actual evidence of such a motivation.

Finally, even if one were to assume for the sake of argument that Hamilton had established a prima facie case, the defendants would still be entitled to summary judgment because there were legitimate nondiscriminatory reasons for giving the position to Chadwell rather than Hamilton, and there is no evidence that those reasons were mere pretext for discrimination. *See Cline*, 206 F.3d at 658. In fact, there was a whole host of legitimate reasons for giving the job to Chadwell. Specifically, the principal of Carr Creek Elementary School has testified that Chadwell was given the position "based on the needs of the students, his excellent evaluations, lesson plan development and implementation, experience in working with the seventh and eighth grade students at Carr Creek, [and] positive attitude towards students, staff and parents." Dep. of Dana Slone, R. 23 at 11-12. In light of these exceptionally valid reasons for giving the position to Chadwell, one could go so far as to say that the Knott County School System would have been remiss if Chadwell had not been given the position. Thus, under the facts of this case, it cannot be denied that there were legitimate nondiscriminatory reasons for giving the position to Chadwell instead of Hamilton.

Nor can it be said that these reasons were mere pretext for discrimination. There record contains nothing whatsoever that would indicate that the defendants acted with discriminatory intent. Hamilton, however, has suggested that the Court should find evidence of discriminatory intent in the

fact that the defendants violated Kentucky law by failing to post the seventh and eighth grade position as an available position. It is not clear that the failure to post the position was a violation of Kentucky law, and Hamilton has not cited any authority in support of her argument that it was a violation. Nevertheless, even if the position should have been posted, the failure to do so would not be proof of pretext. Proving pretext requires Hamilton to "introduce admissible evidence to show 'that the proffered reason was not the true reason for the employment decision' and that [*discriminatory*] *animus* was the true motivation driving the employer's determination." *Grace v. USCAR*, 521 F.3d 655, 677-78 (6th Cir. 2008) (quoting *Barnes v. United Parcel Serv.*, 366 F. Supp. 2d 612, 616 (W.D. Tenn. 2005)). This standard cannot be met by simply showing that the defendants violated Kentucky law by failing to post the position because that fact alone would not be probative of the true motivation behind the decision to hire Chadwell instead of Hamilton. Because procedural rules can be violated for any number of reasons that are completely unrelated to discriminatory animus — e.g., innocent ignorance or negligence — the simple fact that such a violation occurred does nothing to establish a culpable state of mind on the part of the defendants. Thus, Hamilton has presented absolutely no evidence of a discriminatory animus, and therefore cannot show that the legitimate nondiscriminatory reasons for hiring Chadwell were mere pretext for discrimination. As a result, the defendants are entitled to summary judgment on Hamilton's Title VII sex discrimination claim because Hamilton has failed to produce evidence from which a reasonable jury could conclude that victim of intentional discrimination.

### III. Hamilton's § 1983 Claims

In her § 1983 claims, Hamilton has alleged that the defendants violated her rights to equal

protection and due process under the United States Constitution . In order to prevail on these claims, Hamilton must prove both that these rights were violated and that the defendants caused the violations. *Hughlett v. Romer-Sensky*, 497 F.3d 557, 561 (6th Cir. 2006); *Adair v. Charter County of Wayne*, 452 F.3d 482, 493 (6th Cir. 2006) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978)). Because she can prove neither of these things, the defendants are also entitled to summary judgment on Hamilton's § 1983 claims.

First, the defendants are entitled to summary judgment with respect to Hamilton's equal protection claim because this claim requires Hamilton to prove the same elements as a Title VII discrimination claim. *See Lautermilch v. Findlay City Sch.*, 314 F.3d 271, 275 (6th Cir. 2003) (quoting *Jachyra v. City of Southfield*, No. 95-1009, 1996 WL 520795, at *3 (6th Cir. Sept. 12, 1996)). Therefore, Hamilton has failed to establish an equal protection violation for the same reasons that she has failed to establish a Title VII violation.

Hamilton's due process claim also fails due to the lack of a constitutional violation. A procedural due process claim requires the plaintiff to prove: "(1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment of the United States Constitution, (2) that they were deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest." *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999) (citing *Zinermon v. Burch*, 494 U.S. 113, 125-26 (1990)). The problem here is that Hamilton has not been denied a property interest.

Despite Hamilton's claims to the contrary, she did not have a property interest in the seventh and eighth grade position that was given to Chadwell. It is not enough that she simply had a

unilateral expectation of receiving the position or an abstract need or desire for it. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Instead, she could have only had a property interest in the position if she had a legitimate claim of entitlement to it. *See id*. To determine whether she had a legitimate claim of entitlement to the position, the Court must look not to the Constitution, but to independent sources such as state law. *See TriHealth, Inc. v. Bd. of Comm'rs, Hamilton County, Ohio*, 430 F.3d 783, 792 (6th Cir. 2005) (citing *Warren v. City of Athens, Ohio*, 411 F.3d 697, 708 (6th Cir. 2005)). In this case, it is obvious that Hamilton did not have a legitimate claim of entitlement to the seventh and eighth grade position because she was an untenured teacher who had no contractual right to the job. *See Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 141 (6th Cir. 1997) (holding that untenured Head Start Director did not have property interest in her position).

Hamilton claims that her position on the seniority list gave her a legitimate claim of entitlement to the seventh and eighth grade position, but she is incorrect. It is true that contractual arrangements like the seniority list can create property interests in employment, *see id.*, but the seniority system at issue in this case did no such thing. The key fact here is that the seniority list did not provide any guarantees of employment. Instead, seniority was only one of five factors that were to be considered in making teacher placement decisions. R. 14, Attach. 3, Ex. 4 at 11. Thus, even if it were true that Hamilton was the most senior teacher available for the seventh and eighth grade position — which does not appear to be the case — that would not have guaranteed her the job. As a result, the seniority list could not have given her a legitimate claim of entitlement to the position. With no legitimate claim of entitlement to the seventh and eighth grade position, Hamilton cannot maintain a due process claim.

Finally, both § 1983 claims must fail as a matter of law because Hamilton cannot establish the

12

requisite causation. Liability under § 1983 cannot be premised on a resondeat superior theory. *See Ford v. County of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008) (citing *Monell v. Dept. of Social Servs.of New York*, 436 U.S. 658, 691 (1978)); *Smith v. Floyd County Bd. of Educ.*, 401 F. Supp. 2d 789, 796 (E.D. Ky. 2005). Instead, a § 1983 claim requires proof that each defendant actually caused the adverse employment action of which the plaintiff complains. *See Smith*, 401 F. Supp. 2d at 796. In this case, Hamilton cannot show that either defendant actually caused the adverse employment action of which she complains.

As with any political subdivision, Hamilton can only show causation on the part of the Board if she can demonstrate that her adverse employment action was caused by an officially executed policy of the Board, or the toleration of a custom within the school district. *Id.* (citing *Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 507 (6th Cir. 1996)). However, Hamilton has not produced any evidence showing that the Board had an official policy, or tolerated a custom within the school district, that caused Chadwell to be hired instead of her. In fact, Hamilton has been completely silent on this issue and has not even suggested the existence of such a policy or custom. To some extent, Hamilton's silence is understandable since it is clear under Kentucky law that local school boards have no authority or involvement in the hiring of school personnel. As the Supreme Court of Kentucky has stated, "under the Kentucky Education Reform Act, the local board of education is no longer directly involved in hiring school personnel. The school principal, after consultation with the school council, hires school personnel from a list of applicants submitted by the superintendent." *Yanero v. Davis*, 65 S.W.3d 510, 527-28 (Ky. 2001); *see also* Ky. Rev. Stat. § 160.345(2)(h) (setting forth the procedures to be used in hiring teachers). Thus, the Board had no legally prescribed role in the hiring process. Therefore, with the Board having no role in the hiring process, and there being no evidence

13

that it was otherwise involved in any way in the decision to hire Chadwell, Hamilton cannot show that the Board caused her adverse employment action. As a result, the Board cannot be held liable under § 1983. *See Smith*, 401 F. Supp. 2d at 797.

Additionally, Hamilton has also failed to establish causation on the part of Defendant Combs. Unlike the school board, the superintendent of a school system has a role, albeit minor, in making teacher personnel decisions. When there is a vacancy in a school, the superintendent is charged with the responsibility of submitting to the principal the applications of qualified applicants. *See* Ky. Rev. Stat. § 160.345(2)(h). After that point, however, the superintendent has no role in the hiring decision and must accept whoever the principal decides to hire. *See id.* § 160.345(2)(h)(3) ("Personnel decisions made at the school level . . . shall be binding on the superintendent who completes the hiring process"). In this case, the principal of Carr Creek Elementary School told Combs that the only open position was a fifth and sixth grade language arts position. Therefore, Combs's role was to forward the applications of all individuals who were qualified to teach fifth and sixth grade language arts. In complying with this responsibility, Combs obviously did not forward Hamilton's application since she was not certified to teach language arts. Combs's failure to forward Hamilton's application was caused not by his own decision to exclude Hamilton, but by the principal's description of the open position. Thus, it cannot be said that Combs caused Hamilton's adverse employment action by failing to forward her application to the principal of Carr Creek Elementary School. As there is no other evidence on which on could find argue that Combs was the cause of Hamilton's adverse employment action, the § 1983 claims against Combs must also fail for lack of causation.

IV. Conclusion

For the foregoing reasons, it is hereby **ORDERED** that the defendants' motion for summary judgment, R. 13, is **GRANTED**. Accordingly, judgment shall be entered in favor of the defendants, and this matter shall be **STRICKEN** from the active docket.

This the 30th day of December, 2008.

Signed By:
*Amul R. Thapar* AT
United States District Judge